## CHARLES HALL *vs.* RUFUS THAYER & others.

A devise to A and the heirs of his body, and to their heirs and assigns forever, gives A an estate tail; although immediately followed by a devise of other land to B, with a provision that if either lot should, upon appraisal, prove more valuable than the other, the devisee of the more valuable should "give unto the other as much as the overplus is."

A deed by tenant in tail, before *St.* 1791, *c.* 60, of "all his right, title, interest and claim " in the land, though using the words " grant, sell, enfeoff and release," and containing covenants of seizin, good right to convey, and general warranty of "the premises," was not a discontinuance of the estate tail.

A tenant in tail, who, before the *St.* of 1791, *c.* 60, had conveyed away "all his right, title, interest and claim " in the land, was still sufficiently seized and possessed of the estate tail, to enable him to bar the entail by deed under that statute.

Under *St.* 1791, *c.* 60, a tenant in tail may convey by deed an undivided part of the estate tail.

Whether a lost grant or common recovery is to be presumed of an estate tail in land in Boston, created in 1730, and which might have been barred by the tenant in tail by suffering a common recovery before *St.* 1791, *c.* 60, or by deed since that statute, is a fit question to be submitted to the jury upon proof that the records for twenty five years of the court in which common recoveries were recorded were lost, and evidence of deeds and acts of the tenants in tail and other descendants of the first tenant in tail, and of possession of the land by persons claiming under such deeds for fifty years, and other appropriate evidence.

PETITION, filed on the 27th of February 1850, for partition of real estate on Market Square in Boston, two thirds of which were claimed by the petitioner. Answer, a denial that the petitioner was tenant in common with the respondents ; and a notice that the respondents would rely on their title under deeds from the ancestor of the petitioner, and from others entitled to the premises ; and upon the statute of limitations of real actions. Trial before *Fletcher*, J., who reported the case for the decision of the full court, in substance as follows :

The petitioner offered, in support of his title, the will of Susannah Jacobs, dated September 5th 1727, and admitted to probate on the 6th of March 1730, and containing the following devise : " I give and bequeath to my granddaughter Elizabeth Hall, wife to Mr. Hugh Hall of Boston aforesaid, merchant, the house that Mrs. Loyd dwells in, being the next adjoining to my aforesaid brick house, with the land which it stands on and the privileges thereof, and to the heirs of her body lawfully begotten,

and to their heirs and assigns forever." The testatrix then gave another house, in like terms, to another granddaughter, and added : " I will and appoint that, in case either of the two last mentioned houses which I have given to my two granddaughters should, by a just apportionment, exceed the other, then she that hath the most valuable house shall give unto the other as much as the overplus is."

The following facts were proved or admitted : Elizabeth Hall died about 1770, leaving three children, Benjamin Hall and two daughters. Hugh Hall died in 1773. Benjamin Hall died on the 12th of March 1830, and the petitioner was his only son.

The petitioner put in evidence a deed, dated March 7th 1777 whereby Benjamin Hall did " grant, sell, enfeoff and convey " all his " right, title, interest and claim in, to and out of " the land in question to James Boies and George Makepeace, with covenants of seizin " of the premises," of good right to convey the same, and of general warranty ; a warranty deed from Benjamin Hall to Edward Wentworth of one undivided third part of this land, dated September 16th 1795 ; a quitclaim deed from Boies and Makepeace to Wentworth, dated November 10th 1799, of all their interest in the land ; and a quitclaim deed, dated July 18th 1808, of all Wentworth's interest in the land, to one whose title the tenants had since acquired ; all which deeds were duly recorded.

The respondents gave in evidence a recorded deed from each daughter of Hugh and Elizabeth Hall, and her husband, of one undivided third of the land, executed in 1788 and 1792, respectively ; and subsequent conveyances thereof to the respondents.

It was admitted by the petitioner that the respondents and those under whom they claim have been in the quiet, peaceable and uninterrupted possession of the premises, claiming title in themselves, making improvements from time to time, and receiving the rents and profits, ever since the deed of Benjamin Hall to Wentworth in 1795.

The respondents also offered to show that Susannah Jacobs had only a leasehold estate in the premises, which had expired before she made her will.

The respondents also offered, as evidence which would warrant a jury in presuming a grant to those under whom the respondents claimed, to prove the loss ·of the records of the court of common pleas from 1751 to 1776, covering a time during which the estate tail might have been barred by the tenant in tail by suffering a common recovery; acts' of Benjamin Hall and his sisters, and of the grantees of their interests, as showing that they regarded the estate as having been actually and legally divided among them, and also as showing their intention to equalize the shares which they took under the will of Mrs. Jacobs; acts of the petitioner, since the death of his father, regarding this and other estates which formerly belonged to the Hall family; and that this estate had been very often conveyed during the lifetime of Benjamin Hall, in the line of the title of the respondents.

*C. B. Goodrich & A. C. Washburn*, for the petitioner. 1. The devise of Susannah Jacobs to Elizabeth Hall created an estate tail in her and her issue, which, upon the death of her son Benjamin, vested in the petitioner as tenant in tail. *Wight* v. *Thayer*, 1 Gray, 284, and cases cited. The provision for an appraisal of the estates devised to the two granddaughters, and for equalizing their value, did not enlarge the estate to a fee simple. *Lithgow* v. *Kavenagh*, 9 Mass. 161. 6 Cruise Dig. (Greenl. ed.) tit. 38, *c.* 12, § 5, & *notes*.

2. Benjamin Hall's deed to Boies and Makepeace in 1777, being only of his right in the premises, was not a discontinuance; but it vested in them a tenancy for his life in the whole estate, and thus gave them and those claiming under them a freehold estate, certain and indefeasible, until his death in 1830; and this estate was only defeasible by the issue in tail, by entry, or by action, after his death; and therefore this process is not barred by the statute of limitations. Lit. §§ 613, 650. Co. Lit. 331 *a*, & Butler's note. 1 Cruise Dig. tit. 2, *c.* 2, § 13. Gilb. Ten. (Watk. ed.) 120 & *note*. *Buxton* v. *Uxbridge*, 10 Met. 93. *Tilson* v. *Thompson*, 10 Pick. 359. *Cannon* v. *Rimington*, 12 C. B. 1, 18.

3. Benjamin Hall, after his deed of 1777, was still in posses-

sion of the estate tail, although not of the land. *Doe* v. *Finch*, 1 Nev. & Man. 148, 166, 167. By virtue, therefore, of the *St.* of 1791, *c.* 60, § 1, authorizing any person " seized and possessed of any lands in fee tail," to convey the same " or any part thereof " by deed, his deed of September 16th 1795 vested in Wentworth one undivided third part of the land, in fee simple, which has since passed to the tenants. The remedy of the petitioner, therefore, having the title to the remaining two thirds of the estate, with a right of entry, is by petition for partition. *Marshall* v. *Crehore*, 13 Met. 465. *Wood* v. *Le Baron*, 8 Cush. 471.

4. There is no ground for presuming a lost deed from Benjamin Hall to the tenants, or those under whom they claim. Their possession is sufficiently accounted for. *Raymond* v. *Holden*, 2 Cush. 269. *Ricard* v. *Williams*, 7 Wheat. 109.

*P. W. Chandler*, for the respondents. 1. The devises of Mrs. Jacobs to her two granddaughters, with the provision for equalizing the value of the two estates devised, manifest her intention to give each an estate in fee, and will be so construed by the court.

2. To maintain a petition for partition, the petitioner must have a present right of entry. This petitioner has no such right; because the deed of Benjamin Hall of 1777, being a release and feoffment with warranty, was a discontinuance, which took away the right of entry, leaving a mere right of action. Rev. Sts. *c.* 103, §§ 1, 3 ; *c.* 101, §§ 1, 51. 3 Bl. Com. 191. Stearns on Real Actions, 32, 69, 321–324. *Stevens* v. *Winship*, 1 Pick. 328. And that right of action is barred by the statute of limitations. Rev. Sts. *c.* 119, § 1.

3. At least, the deed of 1777 conveyed all Benjamin Hall's estate in the land. *Goodtitle* v. *Bailey*, Cowp. 597. *Pray* v. *Pierce*, 7 Mass. 381. *Russell* v. *Coffin*, 8 Pick. 143. He was was not then " seized and possessed of " the land, as required by *St.* 1791, *c.* 60, to enable him to bar the estate tail by his subsequent deed.

Besides ; the object of the *St.* of 1791, *c.* 60, as declared in its preamble, was only to substitute a more simple method of conveyance for a common recovery, and not to extend to new cases.

See *Soule* v. *Soule*, 5 Mass. 66. That statute cannot therefore be taken to authorize the conveying by deed of an undivided part, which could not have been conveyed by common recovery.

And thus, upon the deeds put in by the petitioner himself, it is not shown that the respondents are tenants in common with him; and therefore, whatever his rights may be, this process must fail.

4. The evidence offered would warrant a jury in presuming a lost deed or grant to the tenants, or those under whom they claim. *Clark* v. *Faunce*, 4 Pick. 245. *Melvin* v. *Locks & Canals*, 17 Pick. 255. *Ryder* v. *Hathaway*, 21 Pick. 298. *White* v. *Loring*, 24 Pick. 323. *Valentine* v. *Piper*, 22 Pick. 92. *Doe* v. *Cooke*, 6 Bing. 174.

SHAW, C. J. This is a petition by Charles Hall for partition of the premises described. He claims as tenant in tail under his father, Benjamin Hall, and that his father, Benjamin Hall, took the estate as heir in tail of his mother, Elizabeth Hall, wife of Hugh Hall, who died in 1773, having survived his wife some years. The petitioner further insists that Elizabeth Hall took an estate tail under the will of her grandmother, Susannah Jacobs, who died in 1730. The claim of the petitioner then may be stated thus : That his grandmother, Elizabeth Hall, being seized of the premises as of an estate tail, died in the lifetime of her husband, leaving a son, Benjamin Hall, father of the petitioner, and two daughters, his only children and heirs. The son, long after the death of his father, Hugh Hall, in 1795 made a conveyance by deed of one third of the estate, which, by mesne conveyances, has come to the tenants. The two sisters also, probably supposing they were tenants in fee, with their brother, of one third each, severally conveyed ; and if their deeds passed any estate, it has come to the tenants or some of them. But the petitioner maintains that his father, Benjamin Hall, took the whole as heir in tail of his mother ; that her daughters therefore took nothing, and could pass nothing by their deeds ; and of course his father, after conveying away one third, held two thirds as tenant in tail, which, on his decease, came to the

petitioner, as heir in tail of his father. From this view it is manifest that the petitioner's claim of title wholly depends upon establishing the position, that the devise of Susannah Jacobs vested an estate tail in Elizabeth Hall, wife of Hugh; that she died seized of the like estate, which, subject to the tenancy by the curtesy of the husband, vested in Benjamin as heir in tail; that the estate tail has never been barred as to two thirds, but, by the form of the gift, came to the petitioner as tenant in tail.

We have not thought it necessary to examine the evidence to show that Susannah Jacobs, the testator, had not an estate in fee in the premises. She died in 1730, having devised to Mrs. Hall an estate; the devisee entered and enjoyed the estate, and lived about forty years; it does not appear that she, or any of her descendants, has been disturbed by any one having a paramount title, and therefore we think it must be presumed that Mrs. Jacobs had an estate in fee.

Nor do we doubt that her devise created an estate tail. It was as follows: "I give and bequeath to my granddaughter Elizabeth Hall, wife of Mr. Hugh Hall of Boston, the house" &c. "and to the heirs of her body lawfully begotten, and to their heirs and assigns forever." The first clause clearly creates an estate tail in the first taker, which is not enlarged by the second clause to heirs general. The very nature of an estate tail is, to pass by descent to a limited class of heirs; and so the latter clause, "their heirs and assigns," must be held to mean heirs of the limited class, capable of taking such estate; in other words, heirs in tail. *Wight* v. *Thayer*, 1 Gray, 284.

Nor do we think that, if Benjamin Hall took an estate tail from his mother, his deed of 1777 to Boies and Makepeace operated in law as a discontinuance, so as to bar the petitioner as remainderman; because it was not and did not purport to be a conveyance of the land, but of his right and interest in it; and that was previous to *St.* 1791, *c.* 60, authorizing a tenant in tail in possession to bar the entail, and to defeat all remainders expectant thereon, by a deed executed in the manner indicated by the statute.

But, for the purpose of quieting titles, the law has a very tender regard for long continued, uninterrupted and unquestioned possession, and will resort to every reasonable presumption to give it effect. The strength of this principle of law is manifest everywhere; but it is more especially forcible where a town or seaport in a new country is making rapid progress, where it is for the interest of the public, as well as of individual owners, to make large outlays in useful and expensive improvements on real estate, and where it often happens that, after the lapse of comparatively a few years, the price of land is advanced ten, fifty or a hundred fold. Entailed estates, we believe, have never been in much favor in this government at any period, though they have always been tolerated; but always under the well known rule, that they might at any time be barred and determined by a common recovery, and, since 1792, by a simple deed.

According to the theory of the petitioner, here was an estate tail created by the will of Mrs. Jacobs as long ago as 1730. Mr. and Mrs. Hugh Hall might, at any time during their joint lives, have barred this entail, by suffering a common recovery; and as a free, unclogged estate in fee simple, on land very near the harbor, would be more beneficial than an estate tail, they had a motive and an interest to effect that change. Benjamin Hall, from the death of his father in 1773, if not under disability, might have suffered a recovery before 1792, or after that time have barred the entail by his deed.

The fact, that Benjamin Hall and his sisters all acted under the belief that they took the estate as an estate in fee, in equal thirds, if it was a fact, as the deeds seem to indicate; and if at the time when it was most important to these heirs and their advisers to know the truth, and when it was most capable of being ascertained, it was believed that either Hugh Hall or his wife Elizabeth held the estate in fee simple; these tend to strengthen the conclusion that, by some legal act, the estate tail has been barred, and an estate in fee, either in one or both of them, legally acquired.

It appears by the report, that evidence was offered at the trial

to show that the records of the courts of common pleas, from 1751 to 1776, have been lost, in some of which such a common recovery might have been recorded.

These, and perhaps other circumstances of like kind, combined with long and uninterrupted possession, may be such as to warrant a presumption of the fact that, either by common recovery or otherwise, this estate was barred before the death of Benjamin Hall in 1830.

The court are therefore of opinion that the case should be left to a jury upon the evidence, with proper instructions, to determine upon the presumption whether the estate tail was or was not barred before March 1830, the time of the death of the petitioner's father.

After the court had come to this result, and before another trial, the case was settled by the parties.